## INTERSTATE COMMERCE COMMISSION v. SOUTHERN RY. CO.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1903.)

### No. 467.

1. CARRIERS—INTERSTATE COMMERCE LAW—UNJUST DISCRIMINATION IN RATES.
   Where the rates charged by a railroad to a particular point are not unreasonable in themselves, the fact that lower rates are charged for a longer haul to other points does not create an unjust discrimination against such point, in violation of the interstate commerce law, where such lower rates are due to active legitimate competition.

Appeal from the Circuit Court of the United States for the Western District of Virginia.

For opinion below, see 117 Fed. 741.

L. A. Shaver, for appellant.

Ed. Baxter (Fairfax Harrison, on the brief), for appellee.

Before GOFF, Circuit Judge, and PURNELL and BOYD, District Judges.

BOYD, District Judge. This is a suit brought by the Interstate Commerce Commission at the instance of certain citizens of the city of Danville, Va., against the Southern Railway Company, on account of alleged discrimination in freight rates against the said city. Facts sufficient for an understanding of the questions involved are stated in the opinion.

In the beginning a petition was filed by the Danville complainants before the commission, and thereupon an investigation was had and an order made by the commission requiring the railway company to reduce its rates on sundry classes of freight to Danville, and on tobacco shipped from Danville to points in the west. The railway company declined to obey the order of the commission, and this suit was brought. The grounds upon which the complaint is based are substantially that the through rates from the west via Lynchburg to Danville are greater than the rate to Lynchburg, and that the rate to Richmond via Lynchburg is less than that to Danville, although the latter place is nearer to the shipping points than Richmond. The principal grievance complained of against the railroad is the rate charged by the Southern Railway for freight between

Lynchburg and .Danville.   Lynchburg and Richmond are both reached by three railway systems, viz., the Southern, the Norfolk & Western, and the Chesapeake & Ohio railways.   Prior to 1886 there were four independent railroads operated to Danville, but in that year three of them passed under the control of the Richmond & Danville Railroad Company.   In 1894 the last-named railroad company was succeeded by the Southern Railway Company, which acquired control of all of the property of the Richmond & Danville Company, and in 1899 the Southern purchased the Atlantic & Danville, which was the remaining railroad running into Danville. .  On account of the several lines reaching Richmond and Lynchburg, and from the fact that these lines, by reason of their location, do business as carriers from the same points in the west, there is active competition at both Lynchburg and Richmond, which has produced exceedingly low freight rates.

From the testimony, it appears that the Chesapeake & Ohio Railroad, which competes with the trunk lines, and which complies with the interstate commerce act by charging no more for the short than the long haul, is primarily responsible for these rates.   The rates given Danville are very much higher than those given Lynchburg and Richmond.   From the record we gather the following instances, which will show the difference in the rates charged on 100 pounds of freight from the points named to Lynchburg, to Richmond, and to Danville.

Rates in cents per 100 pounds to Lynchburg and Danville:

|  | Class 1. | Class 2. | Class 3. |
|---|---|---|---|
| Boston to Lynchburg | 54 | 47 | 28 |
| Boston to Danville | 71 | 63 | 52 |
| New York to Lynchburg | 54 | 47 | 38 |
| New York to Danville | 66 | 58 | 47 |
| Baltimore to Lynchburg | 49 | 42 | 33 |
| Baltimore to Danville | 60 | 52 | 41 |
| Chicago to Danville | 108 | 90 | 70 |
| Chicago to Lynchburg | 72 | 62 | 47 |

|  | Sugar. | Molasses. | Coffee. | Rice. |
|---|---|---|---|---|
| New Orleans to Lynchburg | 32 | 26 | 40 | 32 |
| New Orleans to Danville | 43 | 37 | 51 | 42 |

Tobacco rates to Louisville:

| | |
|---|---|
| From Richmond | 24 |
| From Lynchburg | 24 |
| From Danville | 40 |

The Southern Railway does not share in the competitive through rate from the west to Lynchburg, Richmond, and Norfolk charged by the other railways named, and the water competition from New Orleans is shown by the evidence to have direct effect upon the rates to Norfolk and Richmond.   It is the settled law that a railroad company is not bound to carry beyond its own lines, and there are numerous decisions at circuit that there is nothing in the interstate commerce act to compel connecting railroads to form through rates or to join in making through rates.   In the case of E. T., V. & G. R. Co. v. Interstate Commerce Commission, 181 U. S. 1, 21 Sup. Ct. 516, 45 L. Ed. 719, it is held that:

"The only principle by which it is possible to enforce the whole statute is the construction adopted by the previous opinions of this court; that is, that

122 F.—51

competition which is real and substantial, and exercises a potential influence on rates to a particular point, brings into play the dissimilarity of circumstances and conditions provided by the statute, and justifies the lesser charge to the more distant and competitive point than the nearer and noncompetitive place, and that this right is not destroyed by the mere fact that incidentally the lesser charge to the competitive point may seemingly give a preference to that point, and the greater rate to the noncompetitive point may apparently engender a discrimination against it. We say seemingly on the one hand and apparently on the other, because in the supposed cases the preference is not 'undue' or the discrimination 'unjust.' This is clearly so when it is considered that the lesser charge upon which both the assumption of preference and discrimination is predicated is sanctioned by the statute, which causes the competition to give rise to the right to make such lesser charge."

The commission, in its report as appears in the record, says:

"In some of the discrimination, at least, against Danville, other lines, particularly carriers north of the Ohio river, share. The same thing may be true of water carriers from Eastern cities to Norfolk."

So far as the facts in this case show, the Southern is impartial as between Cincinnati and Louisville traffic, and also that to and from Chicago and St. Louis, and is not responsible for the apparent discrimination against Danville. We cannot present this case in a more intelligent manner than by reproducing from the very learned and comprehensive opinion of the judge below the following:

"The evidence in this case leaves no room for doubt that the competition at Lynchburg (as well as at Richmond) is real and substantial; that it comes about mainly, if not entirely, from conditions not within the control of the defendant in transporting freight to and from Lynchburg and Richmond. It follows that, in reaching a conclusion in this case adverse to the defendant, the rates to and from Danville must be held unreasonable in and of themselves. If reasonable, they cannot be held to subject Danville to an undue prejudice, or to give Lynchburg an undue preference, merely because the Lynchburg rates are considerably lower.

"A strong argument is made by counsel for complainant based on the proposition that the defendant, in purchasing the Atlantic & Danville road in 1899, violated the 'anti-trust act' (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), and consequently seeks to take advantage of its own wrong in treating Danville as a noncompetitive point. In applying the doctrine here invoked, I am met with the evidence that the rates are now no higher than they were when the Southern and the Atlantic & Danville were independent and competing roads. The evidence is that, while there was competition in soliciting business between the two companies, this competition did not reduce the rates. The fact that the Danville rates were as low as the Lynchburg and Richmond rates prior to 1886 does not affect the question. This was prior to the passage of the anti-trust act, and prior to the reduction in rates by the Norfolk & Western and Chesapeake & Ohio. The wrong, therefore, that is charged to the defendant is the purchase of the Atlantic & Danville road. But, as the rates are as low now as they were at the time of the purchase, it does not appear that the defendant has taken any inequitable advantage of the purchase."

It being, therefore, ascertained that the low rates to Lynchburg and Richmond are due to active, legitimate competition, and that the local rates charged by the Southern Railway Company from Lynchburg to Danville are not within themselves unreasonable, we are of the opinion that the principles of law as above stated apply, and the judgment of the Circuit Court is affirmed.